**NEFF, Estate of, In re.**

Probate Court, Hamilton County.

No. 210005. Decided March 26, 1958.

William Saxbe, Atty. Genl., S. Noel Melvin, Asst. Atty. Genl., Columbus, for The Tax Commissioner of Ohio.

Paxton & Seasongood, Cincinnati, for exceptor.

440

## OPINION

By DAVIES, J.:

The Central Trust Company, as executor of the estate of Edith Sterret Neff, who died testate on June 20, 1957, excepted to an order of the Probate Court which levied an Ohio inheritance tax in the amount of $2843.73 upon a succession of $38,671.60 to the Seventh Presbyterian Church of Cincinnati, claiming that §5731.09 R. C., was amended on May 31, 1957, to provide for exemptions of successions to or for the use of established religious organizations within Ohio, that such amendment to the inheritance tax law is included in the classification of "laws providing for tax levies" within the meaning of Section 1d, Article II, Ohio Constitution, which "go into immediate effect," and that the succession to said church is exempt from an Ohio inheritance tax.

Amended §5731.09 R. C., which was passed by the Legislature on May 17, 1957, signed by the Governor on May 31, 1957, and filed in the office of the Secretary of State on May 31, 1957, provides, in part, that "the succession to any property passing to or for the use of - - - any established religious organization, within this state, - - - or any established religious organization within any state of the United States, which does not impose an inheritance, estate, or transfer tax on property given, devised, or bequeathed by a resident thereof to - - - any established religious organization, within this state, - - - shall not be subject to §5731.02 R. C."

Sec. 5731.02 R. C., provides for the levying of an inheritance tax upon successions to property passing under the conditions therein set forth.

Section 1d, Article II, Ohio Constitution, reads as follows:

"Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. Such emergency laws upon a yea and nay vote must receive the vote of two-thirds of all the members elected to each branch of the general assembly, and the reasons for such necessity shall be set forth in one section of the law, which section shall be passed only upon a yea and nay vote, upon a separate roll call thereon. The laws mentioned in this section shall not be subject to the referendum."

The Court must determine if amended §5731.09 R. C., became effective on May 31, 1957, when signed by the Governor and filed in the office of the Secretary of State, or ninety days later, on August 30, 1957. In the former event the succession would not be, and in the latter event it would be, subject to an Ohio inheritance tax.

In The State, ex rel. Schreiber v. Milroy, 88 Oh St 301, the Court considered a case involving quo warranto brought by Cornell Schreiber, as City Solicitor of Toledo, against Charles M. Milroy, as Prosecuting Attorney of Lucas County. Schreiber, as such solicitor, demanded that he be recognized as a member of the Board of Budget Commissioners, claiming the right and title to the office in question by virtue of an act of the General Assembly passed in April, 1913, approved by the Governor on May 6, 1913, and filed in the office of the Secretary

of State on May 9, 1913. Sec. 5649-3b GC, as amended by this act, provided that the Budget Commission of each county should consist of three members, the County Auditor, the Mayor of the largest municipality in the county, and, in counties in which the amount of taxable property in the cities and villages thereof exceeds the amount of taxable property of territory outside of the cities and villages, the third member should be the City Solicitor of the largest municipality in the county. The question arose as to whether the relator, as Solicitor of Toledo, was entitled to the office in question on May 9, 1913, or ninety days thereafter. The relator contended that the act under which he claimed title to the office was one providing for tax levies, and came within the exceptions of **Section 1d, Article II, Ohio Constitution,** which provided that laws providing for tax levies shall not be subject to the referendum. The Supreme Court held that the General Assembly did not, in the act in question, impose a tax, stating distinctly the object of the same, nor did it fix the amount or the percentage of value to be levied, nor did it designate persons or property against whom a levy was to be made. The act, the Court said, "merely imposed certain limitations and created an agency, - - - and cannot be said to be one 'providing for tax levies,' within the meaning of those words as used in **Section 1d, Article II, Ohio Constitution.**" The Court concluded that the act was clearly subject to the referendum and could not become effective until ninety days after it was filed in the office of the Secretary of State.

The Attorney General, in Opinion No. 435 (1951), p. 164, in considering an amendment to §6309-2 GC, which related to the distribution of fees collected under §6292 GC, and its related sections, held that, while such section might be considered to be a law relating to tax levies, it is not a law "providing for tax levies," within the meaning of **Section 1d, Article II, Ohio Constitution,** and that, as amended, it would go into effect at the expiration of ninety days after its filing with the Secretary of State. (See also: Opinion No. 6207, Opinion of Attorney General for 1943, p. 378; Vol. XI—1950—Ohio State Law Journal, 495, at p. 525.)

In **The State, ex rel. Keller v. Forney, et al, 108 Oh St 463,** the Court, in considering the meaning of the phrase "laws providing for tax levies," found in **Section 1d, Article II, Ohio Constitution,** decided that exceptions to the operation of laws, whether statutory or constitutional, should receive strict, but reasonable, construction. The Court held that the language of **Section 1d, Article II, Ohio Constitution,** expressly enumerating certain exceptions to the people's right of referendum upon acts of the General Assembly, must be construed and applied with reference to this rule, and decided that the express language "laws providing for tax levies," is limited to an actual self-executing levy of taxes, and is not synonymous with laws "relating" to tax levies, or "pertaining" to tax levies, or "concerning" tax levies, or any agency or method provided for a tax levy by any local subdivision or authority. The Court (p. 470) stated that "you cannot have a law 'providing for tax levies,' except its public purpose be stated; but, in addition thereto, such law must state the property subject to the tax, the rate of tax, the time when such tax is payable, and other elementary essentials of a taxa-

tion law." The Court stated that the Taft Act, which it was considering, complied with none of these essentials, but was simply a new scheme and a new agency created for levying taxes and enlarging the power and rate of levy, so far as they related to the referendum article. The Court concluded that there could be no doubt that the Taft Act was not a law "providing for tax levies" and was subject to the referendum.

When the people of Ohio established their Constitution, they delegated to the State only such powers as were necessary to guarantee the "inalienable rights" of the citizens, and specifically stated that "government is instituted" for the equal protection and benefit of the people in whom "all political power is inherent." (**Section 2, Article I, Ohio Constitution.**) The Constitution vests the legislative power of the State in a General Assembly, but in keeping with the doctrine that the people are sovereign, they reserve to themselves (**Section 1, Article II, Ohio Constitution**), the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the General Assembly, by initiative and referendum, except as they further provided in **Section 1d, Article II, Ohio Constitution,** that certain laws, including "laws providing for tax levies," shall go into immediate effect.

The word "provide," according to Webster's New International Dictionary, Second Edition, means "to look out for in advance; to procure beforehand; to prepare for the future; to supply what is needed for sustenance or support."

Under the provisions of §5731.09 R. C., prior to its amendment, successions to property passing to or for the use of established religious organizations, within Ohio, were subject to Ohio inheritance tax levies. While it might be stated that the legislature, in amending §5731.09 R. C., enacted a law "relating to," "pertaining to," or "concerning" a tax levy, it did not pass a law "providing for" a tax levy. The amended law excluded designated religious organizations from the obligation or burden of paying Ohio inheritance taxes upon successions to property passing to or for their use. The amendment did not provide for a tax levy. It, in fact, eliminated a tax levy.

For these reasons, the amendment to said §5731.09 R. C., did not "go into immediate effect," but became effective on August 30, 1957, ninety days after it was signed by the Governor and filed in the office of the Secretary of State.

Since Edith Sterret Neff died on June 20, 1957, the bequest made in her will to the Seventh Presbyterian Church of Cincinnati is subject to the payment of an Ohio inheritance tax, and the exceptions filed by The Central Trust Company will be overruled.